IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEWONNA WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:11-CV-0761-D |
| VS. | § | |
| | § | |
| ERIC K. SHINSEKI, SECRETARY, | § | |
| DEPARTMENT OF VETERAN | § | |
| AFFAIRS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Following a jury verdict in plaintiff's favor on her retaliation claim under Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, plaintiff moves for

awards of attorney's fees and front pay.  For the following reasons, the court grants in part

and denies in part the motion for attorney's fees and denies the motion for front pay.

I

Plaintiff Tewonna Williams ("Williams") sued defendant Eric K. Shinseki, Secretary,

Department of Veteran Affairs ("VA") to recover under Title VII and the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., on the grounds that she had

been intentionally mistreated because of a medical condition, sexually harassed by her

supervisor, and retaliated against when she refused and opposed this sexual harassment.

After the court denied the VA's motion for summary judgment—which was based only on

the premise that the VA was not subject to liability under Title VII and the ADA because it

was not Williams' employer—the case proceeded to trial.  By the time the case was submitted to the jury for deliberations, Williams had dropped all of her claims except her Title VII-based retaliation claim.  The jury found in her favor and awarded her the sum of $26,268.14 for economic loss (back pay and benefits) and the sum of $33,731.86 for compensatory damages (emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life).

Williams now moves the court to award $10,296.00 in front pay in lieu of reinstatement, and to award her the sum of $59,342.95 in attorney's fees under 42 U.S.C. § 2000e-(5)(k).  The VA opposes both motions.

## II

The court first considers Williams' motion for attorney's fees.

## A

When a plaintiff prevails on a claim under Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs[.]"  42 U.S.C. § 2000e-(5)(k).[1]

> The determination of a fees award is a two-step process.  First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.  The court should exclude all time that is excessive, duplicative, or inadequately documented.  Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v.*

---

[1]Neither party disputes that Williams is a prevailing party or that attorney's fees can be recovered from the VA.

*Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

*Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010) (some citations omitted). There is a strong presumption, however, that the lodestar is adequate to induce attorneys to undertake representation in meritorious civil rights cases. *See Perdue v. Kenny A.*, 559 U.S. 542, 130 S.Ct. 1662, 1672-73 (2010). The applicant bears the burden of substantiating both the requested hours and the hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

B

To determine the lodestar, the court first considers whether the requested hourly rates are reasonable.

1

"The hourly rates to be used in the lodestar calculation are determined by 'the prevailing market rates in the relevant community.'" *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *15 (N.D. Tex. Dec. 20, 2005) (Fitzwater, C.J.) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). As the fee applicant, Williams "bears the burden of demonstrating 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Blum*, 465 U.S. at 895 n.11).

Williams seeks to recover fees at the hourly rate of $475 per hour for attorney Brian Sanford, Esquire ("Sanford"), and $225 per hour for attorneys Ashley Tremain, Esquire ("Tremain") and David Norris, Esquire ("Norris"). She maintains that these fees are

reasonable considering the local market and each attorney's experience, and she supports this contention with affidavits by Sanford, Norris, and two experienced practitioners familiar with the legal market and the relevant attorneys, each opining that the requested rates are reasonable in the Northern District of Texas.

The VA challenges the assertion that the requested rates are reasonable, and it asks the court to reduce Sanford's hourly rate to $288.00 and the hourly rate for Tremain and Norris to $195.00.  The VA attaches a 2011 publication from the State Bar of Texas, Department of Research & Analysis (the "Report") that details the median hourly rates charged by attorneys in Texas.  The Report includes the median hourly rates for attorneys in certain cross-sections of the general attorney population, such as years of experience, practice area, and location.  The VA notes that the median rate for someone who has 25 years of experience and is practicing in the Dallas-Fort Worth area is $288.00 per hour, and it argues that this is the reasonable rate for Sanford, who has 25 years of experience.  Similarly, the median rate for attorneys with only one year of experience in Dallas is $194.00.  The VA argues this is the appropriate rate for Norris, who has one year of experience, and Tremain, whose experience is not stated in Williams' motion.  Williams responds that the median rate is not necessarily equal to the reasonable rate, especially for attorneys who have high levels of expertise, such as Sanford.  She also attaches Tremain's State Bar of Texas profile and asks the court to take judicial notice that she has been admitted since 2008.

2

"[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).  Earlier this year, the court found that an hourly rate of $400 was reasonable for a civil rights attorney who had been licensed since 1974 and who had "significant experience and ability." *Inclusive Cmtys. Project, Inc. v. Tex. Dep't. of Housing & Cmty. Affairs*, 2013 WL 598390, at *5-6 (N.D. Tex. Feb. 15, 2013) (Fitzwater, C.J.), *appeal docketed*, No. 13-10306 (5th Cir. Mar. 20, 2013).  This hourly rate was awarded in a lawsuit that was considerably more complex than the instant case.  Based on the court's expertise in determining reasonable attorney's fees, Sanford's experience, and the nature of this litigation, the court finds that the hourly rate of $350 is reasonable.  The court also finds, based on Tremain's experience (licensed in 2008) and the nature of this litigation that her reasonable hourly rate is $225.00, and that Norris' reasonable hourly rate, based on his experience and the nature of this litigation, is $200.

C

The court now determines the number of hours reasonably spent by Williams' counsel.

1

The VA objects specifically to 5.5 hours with the billing description "preparation for trial."  According to the VA, this label "inadequately details the work purportedly performed," and should therefore be excluded from the overall time charged.  In support, it

- 5 -

cites *Nassar v. University of Texas Southwestern Medical Center*, which states that "prepare for trial" is an "'exceptionally terse description[] of activities [that does] not satisfy the applicant's burden.'" *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 2010 WL 3000877, at *4 (N.D. Tex. July 27, 2010) (Boyle, J.) (quoting *Wright v. Blythe-Nelson*, 2004 WL 2870082, at *5 (N.D. Tex. Dec. 13, 2004) (Fitzwater, J.)), *aff'd in part, rev'd in part on other grounds*, 674 F.3d 448 (5th Cir. 2012), *cert. granted on other grounds*, 133 S.Ct. 978, 979 (2013). Williams responds that the description is sufficient because the 5.5 hours consist of two entries made close to trial, and while they could have been more descriptive, they need not be for the court to find that the time expended was reasonable.

As this court has said multiple times before, the billing entry "preparation for trial" is vague. *See, e.g.*, *Inclusive Cmtys.*, 2013 WL 598390, at *5; *Nassar*, 2010 WL 3000877, at *4 . "The fee applicant has the burden of presenting adequate documentation of the hours reasonably expended." *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). And a prevailing party's "documentation must be sufficient for the court to verify that the applicant has met its burden." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The description "preparation for trial" does not provide sufficient information for the court to determine whether this time billed was reasonably expended. *See Nassar*, 2010 WL 3000877, at *4 (stating that the entry must "provide sufficient detail to enable the Court to apply its discretion"). Although Williams maintains that the two entries at issue here are not vague because they represent but a few hours and were made shortly before trial, the court is unpersuaded. In *Inclusive Communities*

- 6 -

the court found the billing entries with the description "preparation for trial" were vague even though they were entered on trial days. *Inclusive Cmtys.*, 2013 WL 598390, at *5. Similarly, where the hours were "likely necessary" and counsel's "preparation was evident," the court in *Nassar* still reduced the vague billings by 10%. *Nassar*, 2010 WL 3000877, at *4.

The court can reduce the time awarded for the vague entries. *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *7 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.) (applying 10% reduction to vague entries). The court determines that a reduction of one hour is appropriate here, and therefore reduces the 5.5 hours to 4.5 hours.

2

The VA also argues that the court should consider the fact that Williams succeeded on only one of her claims.[2] It therefore asks the court to reduce the lodestar under factor eight of the *Johnson* factors.[3] The VA posits that Williams is not entitled to fees for any work done on any claim other than her retaliation claim because that claim is not related to the ones that she dropped. Williams responds that her retaliation claim ties all of her claims

---

[2] The VA argues that Williams' complaint includes four causes of action, three of which she abandoned.

[3] Those factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d at 717-19).

together.

The argument that Williams' ADA and sexual harassment claims are unrelated to her successful retaliation claim is properly addressed as part of the lodestar calculation and not as a reduction to the lodestar under the *Johnson* factors.  In *Hensley* the Supreme Court stated:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendant[] . . . , counsel's work on one claim will be unrelated to his work on another claim.  Accordingly . . . , these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim

*Hensley*, 461 U.S. at 434-35.  *See also City of Burlington v. Dague*, 505 U.S. 557, 565 (1992) ("[T]he statutory language limiting fees to prevailing . . . parties bars a prevailing plaintiff from recovering fees relating to claims on which he lost[.]").  By contrast, where a plaintiff's claims for relief

> involve a common core of facts or will be based on related legal theories . . . , much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435.  The court must therefore decide as a threshold matter whether Williams' discrimination or sexual harassment claim is distinct from her successful retaliation claim.  If the claim in question is distinct from the retaliation claim, any hours

spent on that claim are excluded from the lodestar calculation. If, however, the claims involve a common core of facts or are based on related legal theories, i.e., they are not distinct, "the district court's focus should shift to the results obtained and adjust the lodestar accordingly," although it may, if possible, identify specific hours that should be eliminated. *La. Power & Light Co.*, 50 F.3d at 327 n.13 (citing *Hensley*, 461 U.S. at 436-37).

The court holds that Williams' Title VII discrimination claim is related to her retaliation claim. The VA cites *Klebe v. University of Texas Health Sciences Center at San Antonio* for the proposition that discrimination and retaliation causes of action are not related. *Klebe v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 450 Fed. Appx. 394, 397 (5th Cir. 2011) (per curiam) (holding that trial court did not abuse its discretion by concluding that "retaliation and discrimination claims are separate claims depending on different theories and different facts"). But in other instances, courts have concluded that the retaliation and discrimination claims at issue were related. *See, e.g., Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 35-36 (1st Cir. 2012) ("The [district] court plausibly reasoned that the successful retaliation claim and the unsuccessful age discrimination claim shared a common legal theory" because the "plaintiff had to prove . . . that he reasonably and in good faith believed that [defendant] was engaged in discrimination" in order to succeed on his retaliation claim.) (internal quotation marks omitted); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 518 (9th Cir. 2000) (finding retaliation claims "inextricably intertwined" with discrimination claims for purposes of an interconnectedness analysis); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 555 (6th Cir. 2008) ("This court has in fact held

that discrimination and retaliation claims are related for the purpose of awarding attorney fees.") (citation omitted).  The relatedness inquiry therefore turns on the facts and claims of the specific case.  As the Seventh Circuit stated in addressing prior precedent that found a claim of discrimination and a claim of retaliation for opposing that discrimination were distinct, there are undoubtedly cases where discrimination and retaliation claims are so discrete that a plaintiff who succeeds on only one claim would merit only a drastically reduced fee award. *Merriweather v. Family Dollar Stores*, 103 F.3d 576, 583-84 (7th Cir. 1996) (discussing *Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir. 1987)).  But a court does not err in finding that such claims are related for purposes of awarding attorney's fees where "the successful claim for retaliatory discharge could not have been tried effectively without reviewing and analyzing the facts that led to the underlying discrimination charge[.]" *Id.* As in *Merriweather*, Williams' retaliatory discharge claim required her to investigate and present contextual evidence regarding behavior that she alleged was sexual harassment.  The court therefore concludes that the two claims are related.

The court concludes that Williams' ADA claim, however, is unrelated to the retaliation claim on which she prevailed.  The Joint Pretrial Order ("PTO") makes clear that Williams alleged that "the VA subjected her to sexual harassment and that when she complained about the violation, the VA retaliated against her."  PTO 1.  And, as the VA points out, Williams did not argue at trial that she complained about discrimination on account of a medical condition and that this lead to her termination.  In her reply, Williams points to nothing from the trial or any specific argument that ties her ADA claim to her

successful retaliation claim. She instead relies on *ipse dixit* to link the two. Accordingly, the court concludes that these claims are not related and she cannot recover for time spent on her ADA claim.

Because the time expended on her ADA claims is not recoverable, to calculate the lodestar the court must determine how much time Williams' counsel spent on that claim and reduce the reasonable number of hours accordingly. The VA maintains that, because the billing records do not contain sufficient detail for the court to determine how much time Williams' counsel spent on non-retaliation claims, it should assume that counsel worked on each claim equally up to the point at which the claim was abandoned. Williams' reply brief does not provide any indication as to what percentage of counsels' time was spent on the ADA claim as opposed to the sexual harassment or retaliation claims.

Because Williams has the burden of proving the number of hours reasonably expended, and she has not, the court will reduce the total number of hours by 25%. This reduction takes into effect the distinct nature of the ADA claim and the Title VII retaliation claim while recognizing the relatedness of the discrimination claim and Title VII retaliation claim.

D

The VA also argues that the court should reduce the lodestar amount in consideration of the *Johnson* factors, for five reasons: the case involved minimal time and labor because there was limited discovery and no depositions were taken; the case involved no difficult issues; the relatively few hours counsel spent on the case did not preclude them from

- 11 -

maintaining other cases; the fees award as requested would dwarf a contingent fee award, and; Williams' success on her retaliation claim was modest.

The court finds no merit for a downward departure in the first four reasons the VA advances. The lodestar "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue*, 130 S.Ct. at 1673 (internal quotation marks and citation omitted). The minimal time and labor, as well as the difficulty of the issues at play and the ability to handle other cases simultaneously are accounted for in the lodestar; reducing the award in light of these factors would be double counting. *See e.g., Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 771–72 (5th Cir. 1996) (indicating that time and labor is generally subsumed within lodestar); *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (same for preclusion of other employment); *In re Kirby Inland Marine, L.P.*, 2008 WL 4642616, at *9 (M.D. La. Oct. 16, 2008) (finding that lodestar took into account "time and labor required, skill and experience/reputation of the attorneys, the difficulty of the issues . . . , and preclusion of other employment"). As for the VA's argument regarding contingent fees, "[t]he Supreme Court has 'barred any use' of the sixth *Johnson* factor, 'whether the fee is fixed or contingent.'" *Wesley v. Yellow Transp., Inc.*, 2010 WL 4629972, at *5 (N.D. Tex. Nov. 8, 2010) (Fitzwater, C.J.) (quoting *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 193 (5th Cir. 1999)). The court therefore declines to consider how the amount of the award would compare to a contingent fee.

E

What remains is "the most critical factor in determining an attorney's fee award": the degree of success obtained. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (quoting *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003)). There is no precise formula for courts to use in reducing the lodestar amount to reflect a plaintiff's limited success. *See Wright*, 2004 WL 2870082, at *8 (citing *Hensley*, 461 U.S. at 436). "[A] mathematical approach comparing the total number of issues in the case with those actually prevailed upon" is inappropriate because "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors" and because it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Hensley*, 461 U.S. at 435 n.11. When a plaintiff obtains "excellent results, [its] attorney[s] should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation[.]" *Id.* But where a plaintiff "achieve[s] only partial or limited success," granting full compensation may be excessive, and the court may reduce the attorney's fees award to account for the limited success. *Id*. at 436.

The VA first maintains that Williams' success was limited because she obtained only a portion of the relief she requested at trial, pointing out that the jury awarded her $60,000 even though she asked for over $300,000 in damages, and that she failed to obtain reinstatement and injunctive relief. The court also understands the VA to argue that, to the extent Williams' other claims are related to the retaliation claim for the purpose of attorney's fees, her success at trial should be considered in light of the time spent on all related claims.

Williams replies that, although she did request over $300,000 in damages, this was the composite of a request for $26,268.14 in back pay and $300,000 in mental anguish damages. The jury awarded her the entire amount of requested back pay and a portion of her requested mental anguish damages.

The court finds that, although Williams achieved excellent results on her retaliation claim, she achieved somewhat limited success when considering both the sexual harassment and retaliation claims. For her retaliation claim, she obtained all of the back pay and benefits she requested, and a portion of her mental anguish damages. She did not obtain injunctive relief or reinstatement, but both parties agree that reinstatement is not feasible. The court therefore concludes that she achieved excellent results on her retaliation claim. *See Smith v. Tarrant Cnty. Coll. Dist.*, 2010 WL 4063226, at *8 (N.D. Tex. Oct. 13, 2010) (Means, J.) ("Plaintiffs' counsel obtained excellent results in this case, obtaining virtually all of the relief that Plaintiffs' requested.") (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). She obtained limited success, however, when also considering the related sexual harassment claim. Although some time spent on her sexual harassment claim was of obvious value to the presentation and proof of her retaliation claim at trial, she obtained no relief on the sexual harassment claim itself. That is, although Williams obtained the bulk of relief she sought *at trial*, she did not obtain any relief on the related sexual harassment claim that she pursued throughout most of the litigation. And this is not an instance where the remedy for one successful claim overlaps with the remedy for a failed claim such that the court can conclude that, despite prevailing on few claims, the plaintiff has still achieved the bulk of

relief originally sought.  *Cf. Inclusive Cmtys.*, 2013 WL 598390, at *3 (finding excellent results where plaintiff "secured a remedy that addressed virtually every request in its complaint").  In short, Williams did not achieve "excellent results" overall.  The court therefore reduces the lodestar by an additional 15% to adjust for her limited success when considering that the lodestar includes hours spent on the related sexual harassment claim for which she obtained no relief.

F

Williams moves also for an award of $512.95 in total expenses, $379.85 in costs of court, and post-judgment interest on the fees and costs awarded pursuant to this motion.  The VA does not challenge these requests, and the court grants them.

G

In sum, the court finds that the reasonable fees for Sanford, Tremain, and Norris are $350, $225.00, and $200, respectively.  Starting from the total requested hours of 110.4 for Sanford, 3 for Tremain, and 25.4 for Norris, the court reduces Sanford's time by 1 hour for vague entries.  The court then reduces the hours of each attorney by 25%  and 15% for the reasons explained above, resulting in compensable hours of 69.7425 for Sanford, 1.9125 for Tremain, and 16.1925 for Norris.  The court multiplies these hours by the reasonable hourly rates, resulting in a lodestar of $24,409.88 for Sanford, $430.31 for Tremain, and $3,238.50 for Norris, for a total fee of $28,078.69.  The court awards $512.95 in total expenses and $379.85 in costs of court.  The court also awards post-judgment interest at the rate of 0.12% per annum.

III

The court now considers Williams' motion for an award of front pay.

A

When a plaintiff has proved retaliation, Title VII authorizes reinstatement and front pay as equitable remedies.  42 U.S.C. § 2000e-5(g)(1) (authorizing "reinstatement" and "other equitable relief as the court deems appropriate").  Reinstatement is the preferable remedy, and front pay should be awarded only when reinstatement is no longer a feasible option. *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992).  The "district court must consider 'and adequately articulate' its reasons for finding reinstatement to be infeasible and for considering an award of front pay instead." *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 489 (5th Cir. 2007) (quoting *Julian v. City of Hous.*, 314 F.3d 721, 729 (5th Cir. 2002)).

Where reinstatement is infeasible, the district court determines "whether an award of front pay is appropriate, and if so, the amount of the award." *Walther*, 952 F.2d at 127 (citing *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991)).  "In exercising its discretion to award front pay, the district court must consider whether an award of front pay is reasonable under the facts of the case." *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007).  Front pay is appropriate only where "it is required in order to make the plaintiff whole and is 'intended to compensate the plaintiff for lost future wages and benefits.'" *Nassar*, 2010 WL 3633631, at *1 (quoting *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 526 (5th Cir. 2001)).

- 16 -

> The Fifth Circuit has identified several factors to be considered in determining the amount of a front pay award: (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship.

*Id.* (quoting *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) (internal quotation marks omitted)).

B

Both parties and the court agree that reinstatement is infeasible.   Williams has obtained other employment, and the VA, without objection, maintains that "there would be no position within the VA to which [she] could be reinstated" because the entity that paid her wages "no longer has [a relevant] contract with the VA."  D. Mot. for Front Pay Resp. 2 n.1.

C

The court therefore turns to the question whether Williams is equitably entitled to front pay.

Williams seeks $10,296.00 in front pay.[4]   She argues that her current job pays her $16.00 per hour for 40 hours per week, 52 weeks per year, which totals $33,280 per year. She also states that her position with the VA paid $17.65 per hour for 40 hours per week, 52 weeks per year, which totals to $36,712.00.  She seeks front pay in the amount of the difference between these two annual salaries for three years of work, a duration of time that

---

[4]Williams sought the sum of $11,544.00 in her motion for front pay but adjusted the request in her reply because her original calculation was based on an incorrect hourly wage.

she argues is reasonable in light of her work history and the VA's needs.

The VA objects on multiple grounds, arguing that she should not receive any front pay.  The VA contends that (1) Williams would have been fired absent retaliation; (2) it is not the cause of her damages now because Williams was terminated from employment she obtained after leaving the VA, and; (3) Williams worked only 35 hours a week at the VA.

The court finds that Williams is not entitled to front pay because her current employment pays more than her VA position would have paid had she not been terminated. The briefing refers to and contains two documents pertaining to the number of hours Williams worked per week.  The VA includes in its response an employment verification form listing how many hours she worked in each of the final nine weeks of her employment. During only one of the nine weeks did she work 40 hours, and the average number of hours was approximately 35.  Indeed, the form specifically states without qualification that she worked an average of 35 hours a week.

Williams responds that this is misleading because, although she averaged 35 hours per week during the last weeks of her employment, this was not normal.  In support, she attaches a document that she argues proves she worked 40 hours per week, but this document is merely a schedule listing aggregated and *estimated* numbers of hours for various positions. The schedule states that approximately 20 persons holding Williams' position would be needed for 8 hours per day,[5] 5 days per week, and 52 weeks per year, for a total of 41,600

---

[5]The schedule in fact lists an 8.5 hour time slot, but from the context it is clear that this includes a 0.5 hour lunch break.

hours.  But this document states that "[t]he estimated quantities . . . are estimates only, and are presented as information to help prospective bidder's prepare their proposals."  P. Mot. for Front Pay Rep. App. 1.[6]  Without any specific evidence that Williams worked 40 hours per week,[7] and in the face of contrary evidence that she worked only 35 hours per week, the court cannot accept that she made $36,712.00 per year at the VA.  Working only 35 hours per week means that Williams earned $32,123.00 per year, which is less than her earnings at the comparison job.  Even if the court takes the average of her hours per week for her last nine weeks of employment, excludes an abnormally low work week, and rounds up, she averages only 36 hours per week, which means she makes more now than she did at the VA.  Accordingly, the court concludes that Williams was made whole through the jury's award of back pay, and it declines to award her front pay.

*   *   *

For the reasons explained, the court grants in part and denies in part Williams' motion for attorney's fees and expenses, awarding her $28,078.69 in attorney's fees, $512.95 in total expenses, and $379.85 in costs of court.  The court also awards post-judgment interest at the

---

[6]Both parties failed to number the pages of their appendix sequentially in the manner required by the court's local civil rules.  *See* N.D. Tex. Civ. R. 7.1(i)(4).  Because the appendixes referred to in this opinion are brief, the court has independently numbered the documentary evidence for clarity and editorial purposes.

[7]Williams' reply brief states: "Plaintiff normally worked forty hours a week; however, she cannot recall if she testified to this at trial."  P. Mot. for Front Pay Rep. 1.

rate of 0.12% per annum.  The court denies Williams' motion for front pay.

      **SO ORDERED.**

May 6, 2013.

                             SIDNEY A. FITZWATER
                             CHIEF JUDGE